UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michelle and Jeffrey Beard, et al.,

    Plaintiffs,

-v-                                  Case No. 2:06-cv-00137
                                          Judge Michael H. Watson

Dominion Homes Financial
Services, Inc., et al.,

    Defendants.

## OPINION AND ORDER

Plaintiffs in this putative class action have brought suit against Defendant National City Mortgage ("NCM"), asserting claims under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, as well as a state common law claim of fraud. This matter is before the Court on Defendant's motion to dismiss (Doc. 85) on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted. Plaintiffs have filed a response in opposition (Doc. 108), and Defendant has filed a reply (Doc. 123). For the reasons that follow, the Court denies NCM's motion to dismiss.

### I. Facts

The Court accepts as true the well-pleaded facts set forth in the complaint. Defendant Dominion Homes Financial Services ("DHFS") is a mortgage broker that arranges and provides consumer financing for customers of Dominion Homes, Inc. Defendant NCM is a mortgage banking lender and a division of National City Bank.

The putative plaintiff class members include individuals who purchased homes at the Village at Polaris Park and received financing through DHFS.

Putative class representatives Michelle Beard and Jeff Beard responded to an advertisement from Dominion Homes about a housing development at the Village at Polaris Park. (Amended Complaint, Doc. 72, ¶ 34). Plaintiffs signed a home purchase agreement, with an FHA assumable mortgage as one of the terms of the transaction. (Id. at ¶ 38). Plaintiffs signed an FHA loan application which identified National City Mortgage as the "sponsor" for their FHA loan, and met with a loan counselor from DHFS, who told Plaintiffs that they were approved for the FHA assumable loan. (Id. at ¶ 42, ¶ 44) In reliance upon FHA loan approval, Plaintiffs closed their home purchase in June 2003. DHFS arranged the home loan, and provided documents indicating that the loans were FHA insured and assumable. (Id. at ¶ 46-47) The other named class action representatives -- Betsy and Steve Spittell, and Amy and Scott Rudawsky -- had similar experiences, and also closed home purchases around the same time, in June and July 2003. (Id. at ¶ 79, ¶ 106) Shortly after the home closings, NCM took assignment of the mortgage loans that DHFS arranged. (Id. at ¶ 48).

In fact, the Plaintiffs were never approved for an FHA loan, because the development did not meet FHA environmental standards due to excessive noise from nearby Interstate 71. In 2002, NCM conducted an appraisal and evaluation of the proposed housing development at Polaris Park. (Id. at ¶ 20) NCM became aware of potential FHA eligibility problems when, in May 2003, its representatives were present during a HUD (Housing and Urban Development) assessment. The assessment revealed that the Polaris Park development was not FHA eligible. (Id. at ¶ 24).

When it became clear that the loans for the Polaris Park development would not be FHA approved, NCM required DHFS to repurchase the loans, as per their business agreement. (Id. at ¶ 31). In September 2003, NCM sent letters to plaintiffs and other members of the putative class, representing that their mortgage was being transferred from NCM, and that there were no changes in the terms and conditions of the loan (Id. at ¶ 52.) At this time, NCM knew that the Plaintiffs' loans were not FHA assumable. In its transfer of service letter, NCM made no mention of the lack of FHA eligibility for the loans. This omission allegedly misled Plaintiffs into believing that their loans were actually FHA insured. Plaintiffs also allege that NCM made a fraudulent misrepresentation about the specific terms of their home loan, which Plaintiffs relied on when purchasing a home at the Polaris Park development, and that Defendants violated the ECOA by not granting the credit terms requested or giving Plaintiffs notice of any changed credit terms.

## II. Motion to Dismiss

Defendants move to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and 9(b) for failure to plead fraud with particularity. A motion to dismiss for failure to state a claim should not be granted unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). The complaint need only put a party on notice of the claim being asserted against it to satisfy the requirement of stating a claim upon which relief could be granted. Fed. R. Civ. P. 8; *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*,

361 F.3d 898, 902 (6th Cir. 2004). "A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense." *Id.* All well-pleaded allegations must be accepted as true and be construed in favor of the non-movant. *Thomas,* 481 F.3d at 437; *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003). However, the Court need not accept conclusions of law or entertain unwarranted inferences of fact in the complaint. *See e.g., Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).

### III. ECOA Claim

Defendant, NCM, advances two arguments for why Plaintiffs' ECOA claim fails as a matter of law. NCM argues that (1) Plaintiff's complaint is time-barred, because it was brought after the two-year statute of limitations period, and (2) NCM is not a "creditor" for purposes of the ECOA for this alleged violation.

#### A. Statute of Limitations

The statute of limitations period for bringing a claim under the ECOA is two years from the date of the occurrence of the violation. 15 U.S.C. § 1691e(f). NCM argues that the complaint is time-barred because the ECOA violation occurred in June 2003, at the closing of the home purchases, and the complaint was not filed until February 21, 2006. (Motion at 10). The Sixth Circuit has held that the statute of limitations for ECOA claims begins running when the violation occurs, "not at the time at which the consequences of the act become painful." *Mays v. Buckeye Rural* 277 F.3d 873, 879 (6th Cir. 2002). Therefore, the federal discovery rule, which provides that the statute of limitations does not begin to run until the Plaintiff knew or should have known of the injury, does not apply to ECOA claims. *Ruff v. Runyon,* 258 F.3d 498, 500 (6th Cir.

2001); see also, Claybrooks v. Primus Automotive Financial Services 363 F. Supp. 2d 969, 974 (M.D. Tenn, 2005).

Plaintiffs argue that this action is not time-barred, because the statute of limitations was tolled due to Defendant's fraudulent concealment. In the Sixth Circuit, a plaintiff must satisfy three elements to show fraudulent concealment of the cause of action: "(1) the defendant's wrongful concealment of his actions; (2) the plaintiff's resulting failure to discover the operative facts that are the basis of his cause of action within the appropriate limitations period; and (3) plaintiff's due diligence until discovery of the operative facts." Dayco Corp. V. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975). All of these elements must be pleaded with particularity. Id; Fed. R. Civ. P. 9(b).

The amended complaint unambiguously states that the Plaintiffs did not discover the "operative facts" of their cause of action until after the limitations period expired. (Doc. 72 at ¶58, ¶91). NCM argues that as a matter of law, Plaintiff failed to plead with particularity any "wrongful concealment" of its actions and failed to plead its due diligence until discovery of the operative facts. (Doc. 123 at 14)

### B. Wrongful Concealment

NCM correctly relies on Pinney Dock to draw its conclusion that active conduct is necessary to meet the first element of wrongful concealment. (Doc. 123 at 14); Pinney Dock & Transport Co. V. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir. 1982). In that case, the court conceded that allegedly misleading letters and correspondence "may contain the seeds of support for the finding. . .that a factual question of actual concealment was present." Id. at 1476. In their amended complaint, Plaintiffs alleged

'active conduct' by NCM, namely that a letter sent to Plaintiffs in September 2003, misled Plaintiffs into believing that their loans were still FHA insured. (Doc. 72 at ¶ 54)

NCM argues that the conduct itself must be wrongful to satisfy this element, and since the September 2003 letter contained no false statements, it does not qualify. (Doc. 123 at 14). However, the alleged misleading nature of a statement is enough to constitute a wrongful act, to satisfy this element of fraudulent concealment. "[A] statement which, while stating the truth so far as it goes, the maker of which knows or believes to be materially misleading because of his failure to state a qualifying matter, is a fraudulent misrepresentation." *Siebert v. Lalich*, 2006 WL 3446235 (Ohio App.8 2006), *See also McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576 (2nd Cir. 1990).

Drawing all inferences from the facts set forth in the amended complaint in plaintiffs' favor, which the Court accepts as true, the Court finds that Plaintiffs have pleaded with sufficient particularity that NCM wrongfully concealed the potential ECOA claim, so as to toll the statute of limitations.

### C. Due Diligence

NCM also argues that the Plaintiffs failed to plead due diligence until discovery of the operative facts for the cause of action. The Sixth Circuit in *Dayco Corp.*, set forth the test for determining whether there has been a lack of due diligence, by stating, "Any fact that should excite [the plaintiff's] suspicion is the same as knowledge of the entire claim." *Dayco Corp.* 523 F.2d at 394. Thus, in *Campbell v. Upjohn*, the plaintiff did not exercise due diligence to discover his claim, because he had in his possession the merger agreement stating the terms that were the basis of his action. *Campbell v.*

*Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1982). The court found these actions didn't rise to the level of fraudulent concealment. *Id.* In the instant case, Plaintiffs allege that they did not discover the ECOA violation, that is the basis of this cause of action, until December 2005. Unlike *Campbell*, there were no facts to arouse Plaintiffs suspicion before the December 2005 article in the Columbus Dispatch.

From the amended complaint, drawing all possible inferences in favor of the Plaintiffs, the Court cannot say, as a matter of law, that Plaintiffs, through due diligence, could have known that their loans were not FHA insured. Indeed, other circuits have pointed out that due diligence is often an issue of fact inappropriate for summary disposition. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 494 F.2d 168, 172 (10th Circ. 1972). "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief" *Michaels Bldg Co. v. Ameritrust,* 848 F.2d 674, 679 (6th Cir. 1988).

The amended complaint alleges with sufficient particularity the facts necessary to show fraudulent concealment on the part of NCM that would toll the statute of limitations for purposes of avoiding dismissal under Fed. R. Civ. P. 12(b)(6). For the above reasons, at this stage in the litigation, the Court concludes that Plaintiffs' ECOA claim against National City is not barred by the applicable statute of limitations, because Plaintiffs have adequately pleaded the elements of fraudulent concealment.

### D. "Creditor" for purposes of the ECOA.

NCM also argues that the ECOA claim fails as a matter of law because NCM is not a "creditor" for purposes of the ECOA for the violations alleged in this case. (Doc.

123 at 16). Defendant relies on the definition of 'creditor' from 12 C.F.R. § 202.2(l):

> "A person is not a creditor regarding any violation of the Act or regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction."

As NCM points out, the alleged "act, policy, or practice" complained of in this case, the failure to provide FHA-insured loans at closing, was committed by DHFS, not NCM. (Doc. 123 at 17). However, Plaintiffs' amended complaint alleges that representatives of NCM were present at a site assessment in May 2003, which "revealed the Polaris Park development did not meet FHA eligibility standards." (Complaint at ¶ 24). Consequently, according to Plaintiff's amended complaint, which we accept as true for purposes of this motion to dismiss, NCM is a creditor for purposes of the ECOA, because it "knew or had reasonable notice" of DHFS's alleged ECOA violation prior to taking assignment of the mortgage loans in June 2003 (Id. at ¶ 48).

The Court cannot say as a matter of law that Plaintiff's ECOA claim should be dismissed, and therefore Defendant's motion to dismiss, as to this claim, is denied.

## IV. Fraud Claim

National City Mortgage argues that Plaintiffs fail to state a claim of fraud or misrepresentation as a matter of law because they can prove no set of facts consistent with their allegations that would entitle them to relief. In Ohio, the elements of a claim for common law fraud are:

(a) a representation or, where there is a duty to disclose, concealment of

> fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000).

Plaintiffs' fraud or misrepresentation claim stems from the promise of FHA insurable mortgages that induced Plaintiffs to close their home purchases in June and July 2003. The only representation by NCM that Plaintiffs allege is the September 2003 letter indicating that NCM was transferring their mortgage to another lender. Since this representation occurred *after* the home closing, it cannot be material to the transaction, and Plaintiffs cannot have relied on the representation to meet the elements of fraud. *See Hyosung Inc. v. Star Bank*, 2003 WL 22019590, *6 (Ohio App. 8, 2003)(holding that plaintiff could not have relied on a statement when executing an agreement, when the statement was made after the agreement was already signed).

Therefore, as a matter of law, the September 2003 letter sent by NCM to Plaintiffs cannot be the basis for a fraud claim against NCM.

### B. Joint Liability

As an alternative theory for NCM's fraud liability, Plaintiffs allege in their amended complaint that DHFS acted as NCM's agent, and is jointly liable for the alleged fraud of DHFS:

> 17. National City Mortgage Co. routinely enters what it has described as "joint ventures" with home builders and their in-house financing divisions - like Dominion Homes, Inc., and Dominion Homes Financial Services - to jointly profit with the builder and broker through the solicitation, sale,

> and financing of home construction for residential purchasers.
>
> 18. NCM's venture with Dominion Homes and DHFS arose from implicit and express agreements, including contracts under which NCM appointed DHFS as its agent for arranging potential buyers for FHA mortgages.

Amended Complaint (Doc. 72) at 3

NCM argues that these allegations cannot withstand a motion to dismiss, because they do not meet the specificity requirement of Fed. R. Civ. P 9(b). NCM also argues that the allegations of joint liability are contradicted by an express agreement between NCM and DHFS and other allegations made in Plaintiffs' amended complaint. The Court disagrees, and the claim that NCM can be held jointly liable for the alleged fraud of DHFS does not fail as a matter of law.

Fed. R. Civ. P 9(b) requires particularity in pleading the "circumstances constituting fraud." The Sixth Circuit reads Rule 9(b)'s requirement liberally, only "requiring a plaintiff at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Organization for Patients and Providers v. Auto Club Insurance Association*, 176 F.3d 315, 322 (6th Cir. 1999). Plaintiffs are not required to plead with particularity additional evidence relating to the fraud. *See Michaels Bldg Co.*, 848 F.2d at 680 (holding that, before discovery, failure to plead information in other party's control should not lead to a dismissal). Accordingly, Plaintiffs in the instant case are not required to plead with particularity the nature of the alleged joint venture between NCM and DHFS to

withstand a motion to dismiss.

Plaintiffs, in their response to Defendants' motion to dismiss, protested Defendants' introduction of evidence outside the pleadings, namely an agreement between NCM and DHFS. (Doc. 108 at p. 2). The Court recognizes that documents outside the pleadings may be considered without converting a motion to dismiss into a motion for summary judgment, when the documents are referenced in Plaintiffs' complaint and are central to their claim. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Plaintiffs, in their amended complaint, directly refer to "express agreements, including contracts under which NCM appointed DHFS as its agent" (Doc. 72 at ¶ 18), without attaching these documents. Since these documents are central to Plaintiffs' allegation of agency or joint liability, the Court may consider the Agreement attached as Exhibit A to Defendant's motion to dismiss (Doc. 85).

Defendants argue that the attached Exhibit establishes the relationship between NCM and DHFS as buyer and seller, not principal and agent. However, these documents may not represent the entire relationship between these two parties, and do not preclude the finding of a joint venture between the parties. For example, Plaintiffs also allege "implicit agreements" for a joint venture between DHFS and NCM.

NCM also argues that Plaintiffs' allegations of a principal/agent relationship or joint venture relationship between Defendants are inconsistent with the assertions in the amended complaint that DHFS was "supervised, operated and directed by Dominion Homes, Inc." (Amended Complaint, ¶ 14). However, alternative or even inconsistent pleadings are permitted by Fed. R. Civ. P. 8(e)(2), and inconsistent pleadings cannot be

a basis for a motion to dismiss. *Kentucky Home Mut. Life Ins. Co. v. Dulling*, 190 F.2d 797, 801 (6th Cir. 1951); *Power Marketing Direct, Inc. v. Pagnozzi*, 2006 WL 2849815, *10 (S.D. Ohio, 2006).

This Court finds that Defendants' have failed to show that Plaintiffs' fraud claim fails as a matter of law, and accordingly, Defendants' motion to dismiss Plaintiffs' state law fraud claims is denied.

### V. Disposition

Based on the above, the Court **DENIES** Defendant's NCM's motion to dismiss Plaintiff's fraud claims and its claims brought under the Equal Credit Opportunity Act, 15 U.S.C. § 169.

The Clerk shall remove Doc. 85 from the Court's Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**