UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michelle Beard, *et al.,*

Plaintiffs,

-v-

Case No. 2:06-cv-00137
Judge Michael H. Watson

Dominion Homes Financial
Services, Inc., *et al.,*

Defendants.

## OPINION AND ORDER
## CERTIFYING CLASS

Plaintiffs bring this putative class action lawsuit claiming relief under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*; fraud; breach of contract; the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio R.C. § 1345.01 *et seq.*; and the Ohio Mortgage Broker Act ("OMBA"), Ohio R.C. § 1322.01 *et seq.* Plaintiffs seek damages for injuries incurred as a result of alleged misrepresentations by defendants, Dominion Homes Financial Services, Ltd. ("DHFS") and National City Mortgage Co. ("NCM").

Plaintiffs assert defendants failed to provide ECOA-mandated notice that plaintiffs would not receive FHA approved mortgage loans as originally represented and contracted. Moreover, plaintiffs allege defendants intentionally and/or recklessly committed fraud and deceit, which plaintiffs reasonably relied upon to their detriment.

Furthermore, plaintiffs aver DHFS breached its fiduciary duties of full disclosure and competency in dealing with clients' best interests, as well as breached contractual terms in documents signed by plaintiffs. Lastly, plaintiffs maintain DHFS knowingly committed unfair practices in violation of the OCSPA and violated its duties under the OMBA.

Plaintiffs moved to certify on February 20, 2006 (Doc. 2). Defendants oppose certification, arguing, *inter alia*, plaintiffs' claims require such extensive individualized inquiries as to make class certification inappropriate.

For the following reasons, the Court grants plaintiffs' motion.

## I. Facts

The amended complaint names the following plaintiffs: Michelle Beard; Jeffrey Beard; Amy Rudawsky; Scott Rudawsky; Betsy Spittell; and Steve Spittell. DHFS, an Ohio LLC and licensed mortgage broker, contracted and arranged to build a housing development in Columbus, Ohio with NCM, an Ohio corporation. This venture, the Village at Polaris Park, allowed both defendants to profit through soliciting customers, selling plots in the development, and then financing the home construction. DHFS was to act as NCM's agent for qualifying residential buyers for FHA mortgages, and for most purposes, NCM controlled the terms of the loans. NCM had the right to compel DHFS to buy back loans not eligible for FHA financing.

In 2002, NCM had the Village at Polaris Park appraised. Plaintiffs allege defendants had full knowledge that FHA eligibility was dependent on a variety of factors, including limits on allowable noise levels affecting environmental quality. Upon receiving the appraisal evaluation that traffic noise from I-71 would affect the value of

the units within the development, DHFS did not apply for FHA approval until March 27, 2003. Representatives of both defendants were present in May 2003 when the HUD site assessment stated the development had officially failed FHA eligibility standards because of the highway traffic noise. In response, defendants requested a second study be done, which once again rendered the Village at Polaris Park ineligible for FHA approval.

Although HUD proposed mitigation plans, and DHFS claimed it would take steps to alleviate the noise problems, NCM did not believe the development would ever be FHA approved. Therefore, NCM exercised its right to have DHFS buy back the loans for the development. The Village at Polaris Park was never FHA approved.

Plaintiffs have had similar interactions with both defendants. A DHFS salesperson allegedly told Michelle and Jeffrey Beard that if they were to buy in the Village at Polaris Park, they would receive, among other things, an assumable FHA mortgage. The Beards claim they relied on this representation because FHA assumability "would be a good selling point to future buyers."[1] Finding the terms of the loan and purchase agreement acceptable, the Beards signed a home purchase agreement on January 5, 2003. Subsequently, the Beards met with a DHFS loan counselor, who confirmed the Beards would receive FHA financing. The Beards signed the FHA loan application identifying NCM as the sponsor, and shortly thereafter received written notice from DHFS that they had been approved. After this process, the Beards closed on their home and loan on June 19, 2003. The Beards again were

---

[1] Amended Complaint (Doc. 72) at ¶ 37.

reassured by various documents in connection with the closing that their mortgage was FHA assumable.[2]

In September 2003, the Beards received a letter from NCM stating their mortgage would be transferred, but no changes were being made to the terms of the loan. The Beards allege NCM knew the loans were not FHA approved. The Beards came to learn about the true nature of their mortgage through a December 2005 article in the newspaper, and allege, as a result of not having FHA loans, they have sustained legally cognizable injuries.[3]

The Beards also allege defendants received payments from the Beards' substantial fees,[4] the actual cost of which was never brought to their attention. The Beards, as well as the other named plaintiffs, maintain they never "voluntarily approved"[5] to make such payments to the defendants.

The Rudawskys share a similar story. In February 2003, they too were told by a DHFS sales representative that they could receive an assumable FHA mortgage. The Rudawskys, like the Beards, decided to build a home in the Village at Polaris Park, and met with a DHFS loan counselor in March 2003. During this meeting, the loan

---

[2] Amended Complaint (Doc. 72) at ¶ 47 alleges such documents included: "a note and mortgage to which an FHA case number had been assigned; certifications by the seller of its satisfaction of certain FHA requirements and rules; a printed copy of their original handwritten loan application, with a HUD/VA addendum of FHA approval under NCM sponsorship; a HUD-1 Settlement Statement indicating the mortgage was FHA-insured; and an initial payment escrow disclosure explaining their total monthly payment included an amount attributable to the loan's FHA-nature."

[3] Plaintiffs claim, *inter alia*, they have lost the ability to sell their home to a FHA or VA eligible buyer, and have lost the interior and exterior benefits of construction necessary to pass FHA standards (Amended Complaint (Doc. 72) at ¶ 61).

[4] Such fees included payments outside of closing.

[5] Amended Complaint (Doc. 72) at 49.

counselor filled out an application for an FHA mortgage with the Rudawskys information taken from their purchase agreement with DHFS. The Rudawskys signed the application, which contained the same terms as the application signed by the Beards, and then received the same written notice from NCM that they had been approved for the FHA loan. In reliance on the previous events and representations by defendants, the Rudawskys closed on their home and loan in July 2003. Like the Beards, at closing, the Rudawskys received the same documents purporting their mortgage would be an FHA loan.

In September 2003, the Rudawskys received the same letter from NCM stating their loan would be transferred, and also did not learn the true nature of their loan until they read the December 2005 Columbus Dispatch article. The Rudawskys allege they have incurred damages as a result of their loans being ineligible for FHA status.

The Rudawskys also allege, as the Beards, they never approved to make certain payments to defendants that were taken from fees paid outside of closing.

The Spittells' experience mirrors the Beards' and Rudawskys'. The Spittells were seeking a VA mortgage loan, but were convinced by the DHFS sales representative to apply and receive an FHA mortgage. The Spittells contracted to build in the Village at Polaris Park, applied for a loan, were notified in November 2002 by NCM they had been approved, and eventually closed on their home and loan in June 2003. The Spittells received the same documents at closing, were notified in September 2003 that their loan was being transferred, and discovered that their loan was not an FHA loan only upon seeing the same December 2005 newspaper article as seen by the Beards and Rudawskys. The Spittells make a claim for damages and

allege as well defendants received fee payments not voluntarily given by the Spittells.

Plaintiffs filed this putative class action on February 20, 2006, seeking damages and equitable relief. Plaintiffs initially moved for class certification the same day (Doc. 2). Plaintiffs filed an amended motion to certify on February 23, 2006 (Doc. 3). Almost one year later, plaintiffs filed a supplemental motion to certify. (Doc. 78). DHFS and NCM filed their responses in opposition on March 15, 2007 and March 20, 2007, respectively (Docs. 100 and 108). Plaintiffs filed their reply memorandum on April 3, 2007.

## II. Discussion

Plaintiffs seek certification of a class defined as:

All persons who on or after September 14, 2002 applied to defendant Dominion Homes Financial Services, LLC for an FHA mortgage to purchase a home in the Village at Polaris Park but were not provided an FHA loan.[6]

Plaintiffs also seek to certify a subclass defined as:

All class members who also received a notice from DHFS approving their application for an FHA loan, or who signed documents at closing referencing an FHA loan and/or an FHA identifying case number, whose mortgage was not FHA eligible.[7]

Defendants contend the proposed class and subclass are overly broad and ambiguous, thus making it difficult to determine whether the class members have standing to sue. The definitions proposed by the plaintiffs are, in fact, vague and unworkable. The definition of the class could encompass members not receiving a loan due to bad credit. These members would have suffered no legally cognizable injury,

---

[6] Supplemental Motion to Certify Class by Plaintiffs (Doc. 78) at 1.

[7] *Id.*

and thus would have no standing to sue. Nevertheless, the problem is easily rectified. "A district court has discretion to redefine a class" pursuant to Fed. R. Civ. P. 23(c)(1). *Lindsey v. Memphis-Shelby County Airport Authority,* 229 F.3d 1150 (6th Cir. 2000). The Court finds the allegations of the named plaintiffs in this case support the certification of the following defined class:

> All persons who on or after September 14, 2002 applied to defendant Dominion Homes Financial Services, LLC for an FHA mortgage to purchase a home in the Village at Polaris Park; received notice from defendant National City Mortgage approving the application for an FHA loan; subsequently closed and signed documents with defendant Dominion Homes Financial Services, LLC which referenced an FHA loan and/or an FHA identifying case number, only to later discover their mortgage was not FHA eligible.

This class is readily identifiable through plaintiffs' loan applications and other records in possession of defendants. In defining this class of plaintiffs, the issue turns to whether the case should be certified for class action. The standards for determining whether the case should be certified are set forth in Fed. R. Civ. P. 23. Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"[A] district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998). While exercising its discretion, a district court must circumscribe its analysis to the goal of determining whether the proposed class satisfies all four of the requirements proposed by Rule 23(a), as well as one of the subcategories of Rule 23(b). *In re*

*American Medical Systems, Inc.,* 75 F.3d 1069 (6th Cir. 1996). Plaintiffs bear the burden of proving class certification is proper. *Id.*

The Court begins by determining whether each of the four requirements contained in Rule 23(a) are satisfied.

### A. Rule 23(a) Requirements

### 1. Numerosity

Pursuant to Fed. R. Civ. P. 23(a)(1), members of a class can sue on behalf of all members only if that class is "so numerous that joinder of all members is impracticable." Analysis under this portion of the rule does not bind the Court to a "strict numerical test," but looks at the totality of the circumstances. *American Medical,* 75 F.3d at 1079. The Court balances considerations such as judicial economy, geographical location of the members of the class, as well as the size of the defined class. *See Cervantes v. Sugar Creek Packing Co., Inc.,* 210 F.R.D. 611 (S.D. Ohio 2002).

Defendants contend numerosity has not been satisfied because there are only forty-one potential members of the class. "Although it might appear that forty is a small enough number to make joinder practicable, courts have certified smaller classes when the circumstances have deemed it appropriate."[8] *Foster v. D.B.S. Collection Agency,* 2002 WL 484500 (S.D. Ohio 2002). "There is no automatic cut-off point at which the number of plaintiffs make joinder impractical." *Bacon v. Honda of America Mfg., Inc.,* 370 F.3d 565, (6th Cir. 2004). The existence of forty-one members is not so small as to

---

[8]See, e.g., *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51 (N.D. Ill. 1996) ("First, the court notes that the mere number of members in Gaspar's proposed class-18-is not so small as to preclude the numerosity requirement from being met.").

warrant denying plaintiffs' motion without further inquiry into other considerations such as judicial economy.

Defendants argue all of the potential class members reside in the same county in Ohio. While the potential class members may not reside in different parts of the world, it is unlikely each member of the proposed class would have the resources to litigate individually. Thus, considering not only the time and money the judicial system will save, the time and money saved by all parties to the issue weighs heavily towards satisfying this requirement. *See General Telephone v. Falcon,* 457 U.S. 147, 155 (1982). The Court finds, in light of judicial economy and the size of the potential class, plaintiffs have satisfied the numerosity requirement set forth in Fed. R. Civ. P. 23(a)(1).

## 2. Commonality

Upon satisfying Fed. R. Civ. P. 23(a)(1), the Court must turn its analysis to 23(a)(2), which requires "there are questions of law or fact common to the class." Class members satisfy this standard if they have been exposed to a "general policy of the defendant," *In re Cincinnati Radiation Litigation,* 187 F.R.D. 549 (S.D. Ohio 1999), which advances the litigation. *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998)(*en banc*). Plaintiffs contend this requirement is satisfied because each plaintiff was privy to nearly identical "deceptive and unconscionable representations"[9] by defendants.

Defendants argue there is no common issue, and suggest the purported common issue does nothing to advance the litigation. Defendants' arguments are

---

[9] Amended Complaint (Doc. 72) at ¶ 4.

without merit. It is clear from the facts not only are plaintiffs suing under the same legal theories, but plaintiffs' interactions with the defendants are virtually indistinguishable.

To satisfy commonality, a single issue common to all members of the class will suffice, whether fact or legal question. *American Medical,* 75 F.3d at 180 (referencing Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.10 at 3-50). Here, both factual and legal issues are common. Therefore, the Court finds plaintiffs have satisfied the commonality standard within Fed. R. Civ. P. 23(a)(2).

### 3. Typicality

The next step in the Court's analysis lies within Fed. R. Civ. P. 23(a)(3), which requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In determining whether this standard is met, the Court's focus centers around the injuries of the plaintiffs and the relationship of such injuries to the common conduct by defendant experienced by all class members. *See American Medical,* 75 F.3d at 1082. "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (quoting Newberg, supra, § 3-13 at 3-76). While considering typicality, the Court notes if the plaintiffs' claims would fail on the merits, so should the claims of all members of the class. *Id.*

Defendants assert typicality is not met here because plaintiffs' complaint does not identify the common misrepresentations experienced by each person. This, however, is not the case, as a DHFS sales representative told each plaintiff they were applying for an FHA mortgage loan, and each plaintiff received an FHA loan approval

letter from NCM.

Defendants next contend each plaintiff's extent of reliance on the alleged misrepresentations is potentially different, thereby making each claim unique, defeating typicality. This argument lacks merit because it is clear that plaintiffs relied on defendants' misrepresentations in closing on a house and loan which they believed were FHA approved. Although some plaintiffs may have suffered different degrees of injury, all typicality requires is that the nature of the injuries are the same. *Bittinger v. Techumseh Products Co.*, 123 F.3d 877, 885 (6th Cir. 1997). Defendants likewise claim they may apply a different defense to liability depending on the plaintiff, but this contention does not defeat typicality, either. *Id.* at 884.

In the instant case, plaintiffs have experienced the same conduct by defendants which would have been experienced by all members of the class. Consequently, the Court finds plaintiffs have satisfied the typicality requirement of Fed. R. Civ. P. 23(a)(3).

### 4. Adequacy of Representation

The final requirement of Fed. R. Civ. P. 23(a) is subsection (4), requiring the Court to ensure "the representative parties will fairly and adequately protect the interests of the class." This standard has a two-step test requiring both that the named plaintiffs have common interests with the unnamed members of the class, and that counsel is qualified and prepared to "vigorously" represent the class's interests. *American Medical,* 75 F.3d at 1083. Since a final judgment on the merits would bind the entire class, it is important to closely analyze whether the present case meets this standard. *Id.*

For plaintiffs to be adequate representatives, they must not have contrary or

"antagonistic" interests to the absent members of the class. Smith v. Babcock, 19 F.3d 257, 265 (6th Cir. 1994). Defendants assert named plaintiffs in this case do not represent the broadly defined class and subclass as necessary for class certification. Although the Court would be inclined to agree with this assertion if analyzing the plaintiffs' originally proposed definitions of the class and subclass, the Court has redefined the class. Therefore, with defendants' argument no longer an issue, and with no further contention that the named plaintiffs' have any adverse interests to the rest of the class, the Court finds the first prong of the Rule 23(a)(4) test satisfied.

The second standard of the Rule 23(a)(4) test requires that counsel be competent and prepared to "vigorously" represent the entire class. American Medical, 75 F.3d at 1083. Plaintiffs give numerous examples of counsel's experience with class action suits, and extract a supporting quote from the Southern District of Ohio Court's own Judge Marbley: "[Plaintiffs' counsel is] truly one of the outstanding lawyers who appeared before me."[10]

Defendants attack plaintiffs' counsel's competency with multiple allegations,[11] none of which cause the plaintiffs to fail the requirements of Rule 23(a)(4). Under Rule 23(a)(4) analysis, counsel is inadequate when related to or employed by plaintiffs, causing a conflict of interest, see Turoff v. May Co., 531 F.2d 1357 (6th Cir. 1976), or

---

[10] Supplemental Motion to Certify Class by Plaintiffs (Doc. 78) at 12.

[11] "Counsel has previously misrepresented the record before the Court..., has missed deadlines..., has filed the Supplemental Motion for Class Certification in the Rudawsky matter without regard to Judge Watson's standing order on page-limitations or Local Rule 7.2, and has disregarded the Court's Protective Order in this case by filing documentation designated as Confidential in this case in the Rudawsky matter **after** acknowledging that such a filing required leave of Court" (Response in Opposition re Doc. 78 Supplemental Motion to Certify Class filed by Defendant Dominion Homes Financial Services, Inc. (Doc. 100) at 29-30).

when severely inexperienced and incompetent in handling class action suits. *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977). Defendants highlight inadequacies in plaintiffs' counsel that consist of issues which do not prove plaintiffs' counsel is unprepared or unable to vigorously represent the class in a certified class action. Hence, in finding plaintiffs' counsel adequate representation, the Court concludes both the Fed. R. Civ. P. 23(a)(4) requirements have been satisfied.

## B. Rule 23(b) Requirements

Upon satisfying the four Fed. R. Civ. P. 23(a) requirements, plaintiffs must also show their case satisfies at least one of the tests within Fed. R. Civ. P. 23(b). This portion of Rule 23 states:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

> concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b). In this case, plaintiffs move to certify under Rule 23(b)(2) and 23(b)(3). Defendants oppose both grounds of certification claiming neither subsection of Rule 23(b) is satisfied.

### 1. Rule 23(b)(2)

After redefining plaintiffs' class, inquiry into whether the plaintiffs' originally defined class should be certified under Rule 23(b)(2) is no longer necessary. A class certified under Fed. R. Civ. P. 23(b)(2) must be seeking "primarily injunctive or declaratory relief." *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003). The plaintiffs' original class was requesting only declaratory and injunctive relief, but the Court's redefinition of the class changes this scenario. The plaintiffs' redefined class is seeking money damages, creating "a preference for findings of predominance and superiority, as well as notice and the opportunity to opt-out."[12] As a result, the Court's analysis turns to whether the plaintiffs' newly defined class should be certified under Rule 23(b)(3).

### 2. Rule 23(b)(3)

Fed. R. Civ. P. 23(b)(3) requires a similar showing as Rule 23(a)(2) in that common questions exist within the class; however, Rule 23(b)(3) contains the stricter standard of predominance. *American Medical*, 75 F.3d at 1084 (citing Newberg, supra,

---

[12] Plaintiffs' Reply to Defendants' Response Opposing Plaintiffs' Supplemental Motion to Certify Class (Doc. 117) at 15.

§ 3-10, at 3-56). Plaintiffs must also show a class action is superior to individual lawsuits. Fed. R. Civ. P. 23(b)(3).

Plaintiffs first must demonstrate the common questions actually predominate over any individual issues. Fed. R. Civ. P. 23(b)(3). Courts have found the individualization of issues in mass tort claims can be reason for the denial of class certification. *American Medical*, 75 F.3d at 1084. The Court must be careful in certifying a class where "individual stakes are high and disparities among class members are great." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Defendants contend predominance is not met because no single event or set of operative facts establishes liability common to each potential class member. Furthermore, defendants argue different affirmative defenses would apply depending on "the facts peculiar to each transaction."[13]

The Court disagrees. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* Additionally, there is clearly one set of operative facts which would create liability to each potential class member, as evident in the definition of the class. Each class member will have applied for an FHA mortgage loan, been notified of their approval for such a loan, and in reliance on this information, will have closed on their home and purported FHA loan only to find out later that the mortgage was not FHA approved. Consequently, no facts would be peculiar to the individual transactions, and each member will have experienced similar misrepresentations by defendants. The injuries

---

[13] Response in Opposition re: Doc. 78 Supplemental Motion to Certify Class filed by Defendant Homes Financial Services, Inc. (Doc. 100) at 32.

alleged by the plaintiffs are of the same nature as well. The Court therefore finds common questions predominate over individual issues in this case.

Secondly, plaintiffs must show that a class action is superior to individual litigation of the claims. Fed. R. Civ. P. 23(b)(3). In considering this standard, the Court should balance the merits of the class action in terms of fairness and efficiency. *Violette v. P. A. Days, Inc.*, 214 F.R.D. 207, 220 (S.D. Ohio 2003).

Defendants maintain a class action in this instance is not superior because the claims of each class member are individualized.[14] As the Court has stated throughout this Opinion, the claims of each potential class member are virtually identical. Each named plaintiff has been exposed to similar misrepresentations which led them to enter similar business transactions with defendants, and there would be no difference in the claims of potential class members as this Court has redefined the proposed class.

Plaintiffs urge a finding of superiority, insisting it would save costs for the individual litigants, assure a final and reliable resolution of the claims, and give individual members an "opt out" right if they disagree with the litigation.[15] Plaintiffs also assert certifying this case as a class action would be manageable because the core questions of law and fact will be easily resolved for all absent members. It is evident the consolidation of the claims in this case into a class action would serve efficiency and fairness. Accordingly, the Court finds plaintiffs have met the standards set forth in Rule 23(b)(3).

---

[14] Id. at 33.

[15] Inherent in Rule 23(b)(3) is an "opt out" right to those litigants wishing to take back individual control over their claims.

### C. The Ohio Consumer Sales Practices Act

Plaintiffs in this case bring a claim, *inter alia*, under the Ohio Consumer Sales Practices Act (OCSPA). Although satisfying the requirements of Fed. R. Civ. P. 23 usually ends the Court's analysis as to whether to certify the case for class action, the OCSPA imposes an additional requirement. The relevant provision of the OCSPA states as follows:

> (B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

Ohio Rev. Code § 1345.09.

A consumer may qualify for class-action certification only when the defendants' alleged violations of the OCSPA are substantially similar to an act or practice previously declared to be deceptive by one of the methods defined in O.R.C. § 1345.09(B). *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5 (Ohio 2006). Such methods are a declaration by the Attorney General and a decision by the court in the state of Ohio made attainable through public records. Ohio Rev. Code §§ 1345.05, 1345.09.

Plaintiffs give numerous examples of previously declared unfair or unconscionable conduct substantially similar to that of defendants'[16] which stand

---

[16] Amended Complaint (Doc. 72) at ¶¶ 150-52.

uncontested by the defendants. Plaintiffs point to, *inter alia*, Ohio Admin. Code § 109:4-3-02, which condemns advertising or marketing without listing exclusions, limitations or modifications. Plaintiffs also point to court decisions placed in the Public Inspection File of the Ohio Attorney General prior to defendants' actions: Misrepresenting benefits of the goods and services being offered to consumers and "knowingly mak[ing] misleading statements upon which consumers are likely to rely to their detriment" is unfair and deceptive (*State ex rel. Montgomery v. Freeman dba Tarf Network Marketing*, (Franklin C.P. 1995) Case No. 95 CVH02-1035, P.I.F. #1512); bait and switch tactics such as failing to deliver a promised benefit is unfair and deceptive (*State ex rel. Montgomery v. Thousand Adventures of Ohio, Inc.* (Hamilton Co. 1999), Case No. A9500636, P.I.F. #1784); a "[m]ortgage broker is prohibited under R.C. § 1322.07(B) from . . . engaging in a continued course of misrepresentation, and engaging in conduct that constitutes improper, fraudulent or dishonest dealings" (*Smith v. Northwest Residential Mortgage Services, Ltd.* (Franklin Co. 2002), Case No. 01 CVH09 8630, P.I.F. # 2118); and "engaging in any fraudulent oral or written misrepresentations, or otherwise conveying factually incorrect information to clients" as well as "accepting money for consumer services knowing that the consumer will not receive the services for which she has paid" are unfair practices (*Lardakis v. Martin* (Summit Co. 1994), Case No. CV 94 01 0234, P.I.F. #1436).

Defendants also argue OCSPA's class certification requirement cannot be met because the standards in Fed. R. Civ. P. 23 are not met. While the requirement under the OCSPA would be a nonissue if the requirements in Fed. R. Civ. P. 23 had not been met, it is not the case here. Since plaintiffs' allegations remain uncontested, and the

Court finds these examples contain substantially similar conduct to that of defendants, the class action certification requirement of the OCSPA is met.

### D. Disposition

For all of the above reasons, the Court holds this case satisfies the requirements of Fed. R. Civ. P. 23 as well as the requirement of the Ohio Consumer Sales Practices Act. Accordingly, the Court **GRANTS** plaintiffs' motion to certify class (Doc. 78).

The Court **CERTIFIES** the following class under Fed. R. Civ. P. 23:

All persons who on or after September 14, 2002 applied to defendant Dominion Homes Financial Services, LLC for an FHA mortgage to purchase a home in the Village at Polaris Park; received notice from defendant National City Mortgage approving the application for an FHA loan; subsequently closed and signed documents with defendant Dominion Homes Financial Services, LLC which referenced an FHA loan and/or an FHA identifying case number, only to later discover their mortgage was not FHA eligible.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**